**EXHIBIT A**

## IN THE IOWA DISTRICT COURT FOR POTTAWATTAMIE COUNTY

| | |
|---|---|
| CHRISTIAN HOME ASSOCIATION - CHILDREN'S SQUARE U.S.A., and PHILADELPHIA INDEMNITY INSURANCE COMPANY as subrogee of CHRISTIAN HOME ASSOCIATION - CHILDREN'S SQUARE U.S.A., <br><br> Plaintiffs, <br><br> vs. <br><br> SEISCO INTERNATIONAL LLC, A.O. SMITH CORPORATION, THERM-O-DISC, INCORPORATED, EMERSON ELECTRIC CO., THE EMERSON ELECTRIC MANUFACTURING COMPANY, and ABC CORPORATIONS 1-10, <br><br> Defendants. | DOCKET NO. LACV123222 <br><br><br> **PETITION AT LAW AND JURY DEMAND** |

### PETITION

Plaintiffs, Christian Home Association - Children's Square U.S.A. and Philadelphia Indemnity Insurance Company as subrogee of Christian Home Association – Children's Square U.S.A., by counsel, in support of this Petition against the Defendants, Seisco International LLC, A.O. Smith Corporation, Therm-O-Disc, Incorporated, Emerson Electric Co., The Emerson Electric Manufacturing Company, and ABC Corporations 1-10, alleges as follows:

### PARTIES

1.      At all times relevant hereto, Plaintiff, Christian Home Association - Children's Square U.S.A. (hereinafter "Christian Home"), owned and operated the property located at 619 Curtis Street, Council Bluffs, IA 51503 (the "Property").

2.     Christian Home is a non-profit organization organized and existing under the laws of the State of Iowa with a principal place of business located at North 6th Street & Avenue E, Council Bluffs, IA 51502.

3.     At all times relevant hereto, Plaintiff, Philadelphia Indemnity Insurance Company (hereinafter "Philadelphia Indemnity"), provided insurance to Christian Home for the Property under Policy Number PHPK1572422 (the "Policy").

4.     Philadelphia Indemnity is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business located at 1 Bala Plaza, Suite 100, Bala Cynwyd, PA 19004.

5.     At all times relevant hereto, Philadelphia Indemnity was licensed to transact business and authorized to issue policies of insurance in the State of Iowa.

6.     Defendant, Seisco International LLC ("Seisco"), is a corporation duly organized and existing under the laws of the State of Texas, with its principal place of business located at 241 Airtex Drive, Houston, TX 77090.

7.     Seisco was involved in the business of designing, manufacturing, distributing, selling, assembling, installing, testing, inspecting, servicing and/or maintaining water heaters, including electric water heaters with model no. RA-28 and the specific RA-28 water heater that was installed at the Property, failed, and resulted in flooding (the "Water Heater").

8.     Defendant, A.O. Smith Corporation ("A.O. Smith"), is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 11270 W. Park Place, Suite 1200, Milwaukee, WI 53224.

9.     A.O. Smith was involved in the business of designing, manufacturing, distributing, selling, assembling, installing, testing, inspecting, servicing and/or maintaining water heaters, including electric water heaters with model no. RA-28 and the specific RA-28 water heater that was installed at the Property, failed, and resulted in flooding (the "Water Heater").

10.     All references, allegations, and counts against Seisco and A.O. Smith are imputed to one another.

11.     Defendant Therm-O-Disc, Incorporated ("Therm-O-Disc") is a corporation duly organized and existing under the laws of the State of Ohio, with its principal place of business located at 1230 S. Main Street, Mansfield, OH 44907.

12.     Therm-O-Disc was involved in the business of designing, manufacturing, distributing, selling, assembling, installing, testing, inspecting, servicing and/or maintaining Therm-O-Disc-brand temperature sensors (also referred to as a temperature control, high-temperature limit switch, or thermal cutoff), including the TOD snap-action temperature control with model no. 36T31 21816 L160-15F 700.009 and the specific temperature sensor that was incorporated into the Water Heater (the "Sensor").

13.     Defendant Emerson Electric Co. ("Emerson Electric") is a corporation duly organized and existing under the laws of the State of Missouri, with its principal place of business located at 8000 W. Florissant Avenue, Saint Louis, MO 63136.

14.     Emerson Electric was involved in the business of designing, manufacturing, distributing, selling, assembling, installing, testing, inspecting, servicing and/or maintaining Therm-O-Disc-brand temperature sensors (also referred to as a temperature control, high-temperature limit switch, or thermal cutoff), including the TOD snap-action temperature control with model no. 36T31 21816 L160-15F 700.009 and the specific temperature sensor that was incorporated into the Water Heater (the "Sensor").

15.     The Emerson Electric Manufacturing Company ("Emerson Manufacturing") is a corporation duly organized and existing under the laws of the State of Missouri, with its principal place of business located at 8000 W. Florissant Avenue, Saint Louis, MO 63136.

16.     Emerson Manufacturing was involved in the business of designing, manufacturing, distributing, selling, assembling, installing, testing, inspecting, servicing and/or maintaining Therm-O-Disc-brand temperature sensors (also referred to as a temperature control, high-temperature limit switch, or thermal cutoff), including the TOD snap-action temperature

control with model no. 36T31 21816 L160-15F 700.009 and the specific temperature sensor that was incorporated into the Water Heater (the "Sensor").

17.     All references, allegations, and counts against Therm-O-Disc, Emerson Electric, and Emerson Manufacturing are imputed to one another.

18.     Upon information and belief, Defendants ABC Corporations 1-10 are unknown individuals, corporations, partnerships, sole proprietors and/or other entities that designed, engineered, manufactured, tested, inspected, delivered, distributed, and/or sold the Water Heater or any of its defective component parts, including the Sensor, that caused the Water Heater to fail and result in water loss.

## VENUE AND JURISDICTION

19.     The court has jurisdiction over the Defendants because the Defendants regularly conduct business in the State of Iowa.

20.     Venue is proper in the County of Pottawattamie because the Defendants regularly conduct business in the County of Pottawattamie and the underlying incident occurred in the County of Pottawattamie.

## STATEMENT OF FACTS

21.     Plaintiffs incorporate the foregoing paragraphs by reference as though fully set forth herein.

22.     Shortly after the Water Heater was installed on the second floor of the Property, on September 4, 2017, the Water Heater that was designed, manufactured and sold by Seisco and A.O. Smith, failed and caused water to flood throughout the building.

23.     Following the Water Heater's failure, A.O. Smith and Seisco conducted an inspection of the Water Heater as well as 33 other RA-28 units installed at the complex.

24.     A.O. Smith/Seisco concluded that the Water Heater's Therm-O-Disc temperature sensor with model no. 36T31 21816 L160-15F 700.009 (the "Sensor") failed due to product defects.

25. A.O. Smith/Seisco stated it no longer used these types of sensors designed, manufactured and sold by Therm-O-Disc, Emerson Electric and Emerson Manufacturing within its water heaters, because of known failures and defects with the sensors.

26. Despite A.O. Smith/Seisco having this knowledge that TOD sensors were defective, thereby causing its water heaters to fail and result in damage, A.O. Smith/Seisco did not issue a recall on its water heaters containing the defective sensors nor did A.O. Smith/Seisco warn the consumer of the risk of failure.

27. Following the Water Heater's failure, A.O. Smith/Seisco replaced the Sensor in the Water Heater with another type of temperature sensor.

28. A.O. Smith/Seisco also replaced, at no cost to Christian Home, all other model no. 36T31 21816 L160-15F 700.009 sensors in the remaining RA-28 water heaters at the Property so as to prevent future failures and water losses.

29. The A.O. Smith/Seisco representative, to his credit, openly admitted that the Sensor was defective; that A.O. Smith/Seisco no longer uses this brand/model sensor; that they switched to using another brand rather than Therm-O-Disc; and that the replacement parts by the other brand are made in a way that will not fail like the Sensor.

30. The Sensor is a temperature control; when water within the water heater reaches the maximum temperature, the high temperature limit switch is supposed to cut off the temperatures within the unit to prevent overheating.

31. However, the Sensor did not act as intended.

32. The Sensor failed when its brass threads failed:



33.    The Sensor's threads failed due to dezincification and/or stress corrosion cracking, or an intergranular brittle mechanism, brought on by design and/or manufacturing defects and materials deficiencies.

34.    When the Sensor's threads failed, the Sensor popped from the hole in which it was previously threaded.

35.    This allowed water to escape, flooding the building.

36.    The Sensor's brass should not have corroded, cracked and fractured – as can be seen in an exemplar sensor:



37.    The Sensor was fabricated from a leaded, high zinc brass with a dangerous zinc concentration of 36%.

38.    This excessive zinc content made failure certain.

39.    The material composition contained no corrosion inhibitors.

40.     Lead composition of such a high amount as contained also should not have been used in contact with drinking water. Such elevated levels risked human safety.

41.     Once the Sensor failed and caused the water loss, the Water Heater's heating element ran all of the time as a result of the Water Heater's detector picking up on the continuous flow of water as water flooded from the machine.

42.     As a direct and proximate cause of the Water Heater's failure and the resulting water loss, Christian Home suffered substantial damage to its real and personal property in the amount of $113,409.02.

43.     Pursuant to Christian Home's insurance policy with Philadelphia, Philadelphia covered the loss under the Policy, with Christian Home incurring a $10,000.00 deductible.

## COUNT ONE – STRICT PRODUCT LIABILITY
*(against Seisco)*

44.     Plaintiffs incorporate the foregoing paragraphs by reference as though fully set forth at length herein.

45.     Defendant designed, manufactured, assembled, tested, marketed, inspected, distributed, supplied and/or sold the Water Heater and Sensor in an unreasonably dangerous and defective condition such that it was not reasonably fit, suitable or safe for its normal, ordinary, intended, expected or reasonably foreseeable use, including for use with potable drinking water.

46.     At the time that the Water Heater and its Sensor were sold, they were in the same unreasonably dangerous and defective condition as when they left Defendant's custody and/or control.

47.     At all times relevant hereto, the Water Heater and its Sensor were used in the manner that was ordinary, normal, intended, expected and reasonably foreseeable by Defendant.

48.     The defective condition of the Water Heater and its Sensor were the direct and proximate cause of the water loss and resulting property damage, for which the Defendant, acting by and through their employees, agents, contractors, subcontractors, servants, representatives,

and/or other designees, each of whom was working within the course and scope of their employment and/or authority, for which the Defendant is strictly liable by reason of, *inter alia*:

    (a)    Designing, manufacturing and/or selling the Water Heater in a condition in which the Sensor would corrode, fracture and fail during ordinary use of the water heater;

    (b)    Designing, manufacturing and/or selling the Water Heater in a way that put excessive stresses on the Sensor during the manufacturing and assembly process thereby causing it to fracture/corrode during ordinary use of the water heater; and

    (c)    Designing, manufacturing and/or selling the Water Heater with brass temperature sensors comprising of 36% zinc;

    (d)    Failing to design, manufacture and/or sell the Sensor in a condition that would not result in dezincification and stress corrosion cracking;

    (e)    Failing to design, manufacture and/or sell the Water Heater in a manner that would not result in the water loss; and

    (f)    Failing to sell the Water Heater and Sensor with alternative designs that would have prevented the harm;

49. For the above-referenced reasons, the Defendant is strictly liable for the damages caused by the Water Heater.

50. The unreasonably dangerous and defective condition of the Water Heater was a direct and proximate cause of the damage Plaintiffs suffered.

**WHEREFORE**, Plaintiffs hereby demand judgment in their favor and against Seisco International LLC, jointly and severally, in an amount in excess of $113,409.02, along with interests, attorneys' fees, costs and other such relief as this Court may deem just and appropriate.

## COUNT TWO – NEGLIGENCE
### *(against Seisco)*

51. Plaintiffs incorporate the foregoing paragraphs by reference as though fully set forth at length herein.

52. Defendant owed a duty to Plaintiffs to properly design, manufacture, distribute and/or sell the Water Heater and Sensor in a condition that was safe for its ordinary, normal, intended, expected and reasonably foreseeable use, including safe to human health.

53. Defendant, acting by and through its agents, servants, employees, sub-contractors, representatives and/or other designees, all acting within the course, scope and authority of their employment, breached its duty in one or more of the following ways, *inter alia*:

    (a)    Designing, manufacturing, assembling, distributing, and/or selling the Water Heater and the Sensor with improper materials and materials composition;

    (b)    Designing, manufacturing, assembling, distributing and/or selling the Water Heater and the Sensor in a condition that Defendant knew, or reasonably should have known, was unreasonably dangerous and defective;

    (c)    Designing, manufacturing, assembling, distributing and/or selling the Water Heater and Sensor that subjected Plaintiffs to an unreasonable risk of harm;

    (d)    Failing to design, manufacture, assemble, test, inspect, market, distribute and/or sell the Water Heater and Sensor so that it was safe, suitable and fit for its ordinary, normal, intended, expected and foreseeable use;

    (e)    Failing to design, manufacture, assemble, test, inspect, market, distribute and/or sell the Water Heater and Sensor in conformity with prevailing industry specifications and standards;

    (f)    Failing to adequately and properly test and inspect the Water Heater and its component parts, so as to prevent consumers, including Plaintiffs, from being subjected to an unreasonable risk of harm;

    (g)    Failing to design, manufacture, assemble, test, inspect, market, distribute and/or sell the Water Heater and Sensor with the appropriate safety devices or design to prevent the risk of failure;

    (h)    Failing to discover the defects in the design and manufacture of the Water Heater;

    (i)    Failing to discover the defects in the design and manufacture of the Sensor;

    (j)    Failing to adequately and properly supervise, monitor, direct, advise and control the design and manufacture of the Water Heater and Sensor;

(k)     Failing to institute or provide adequate policies, procedures and/or controls so as to avoid designing, manufacturing, distributing and/or selling the Water Heater in a defective and unreasonably dangerous condition;

(l)     Failing to design, manufacture, assemble, test, inspect, market, distribute and/or sell the Water Heater and Sensor with the proper material composition so as to prevent failure;

(m)     Failing to provide adequate directions, instructions and/or warnings concerning the risk of failure; and

(n)     Otherwise failing to exercise due care under the circumstances.

54.     As a direct and proximate result of Defendant's negligent, reckless and/or careless acts and/or omissions, by and through its agents, servants, employees, sub-contractors, representatives and/or other designees, all acting within the course, scope and authority of their employment, Plaintiffs suffered property damages.

55.     The damages sustained by Plaintiffs are within the scope of Defendant's liability, and said damages arose from the same general type of conduct that Defendant should have taken reasonable steps to avoid.

**WHEREFORE,** Plaintiffs hereby demand judgment in its favor and against Seisco International LLC, jointly and severally, in an amount in excess of $113,409.02, along with interests, attorneys' fees, costs and other such relief as this Court may deem just and appropriate.

### COUNT THREE – BREACH OF WARRANTY
*(against Seisco)*

56.     Plaintiffs incorporate the foregoing paragraphs by reference as though fully set forth at length herein.

57.     Defendant expressly and/or impliedly warranted that the Water Heater was fit for use in the ordinary, normal, intended, expected and reasonably foreseeable manner.

58.     Defendant knew or should have known that consumers, including Christian Home, rely on Defendant's superior knowledge skill and expertise in the design, manufacture, assembly and distribution of water heaters, including the Water Heater.

59. While the Water Heater was being used in its ordinary, normal, intended, expected and reasonably foreseeable manner, a substantial water loss occurred as a result of a design and/or manufacturing defect in the Water Heater.

60. As a direct and proximate result of Defendant's breach of its express and/or implied warranties, Plaintiffs suffered substantial damage.

**WHEREFORE**, Plaintiffs hereby demand judgment in its favor and against Seisco International LLC, jointly and severally, in an amount in excess of $113,409.02, along with interests, attorneys' fees, costs and other such relief as this Court may deem just and appropriate.

## COUNT FOUR – STRICT LIABILITY: FAILURE TO WARN/INSTRUCT OR INADEQUATE WARNING/INSTRUCTION
### *(against Seisco)*

61. Plaintiffs incorporate the allegations contained in the preceding paragraphs as if fully set forth at length herein.

62. The Water Heater and Sensor that Defendant designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold, were unreasonably dangerous in their design and manufacture, and such defects existed at the time of marketing.

63. Christian Home was a member of the class of persons that Defendant should reasonably have foreseen as being subject to the harms caused by the Water Heater and Sensor's defective condition.

64. At the time Defendant sold the Water Heater and Sensor, Defendant knew, or should have known, that the Water Heater and Sensor contained a non-obvious and unreasonably dangerous condition, which a consumer, including Christian Home, would not comprehend without adequate warnings/instructions.

65. Defendant knew, or should have known, that the Water Heater and Sensor were highly susceptible to failure under expected installation and use conditions and that consumers,

including Christian Home, would not inspect or replace the Water Heater without adequate warnings/instructions.

66.     Defendant failed to inform consumers, including Christian Home, as to the Water Heater's susceptibility to sudden catastrophic failure.

67.     The Water Heater and Sensor were defective and unreasonably dangerous due to the lack of warnings/instructions regarding the risk of failure and potential harm.

68.     Had Christian Home been adequately warned/instructed concerning the defects or the likelihood that the Water Heater would fail, they would have taken steps to avoid the harm by replacing the Water Heater or by not purchasing it.

69.     Furthermore, after learning of defects with the temperature controls and that its water heaters could suddenly fail, Defendant had a duty to warn consumers of the possibility that catastrophic failure and flooding could result from the failure of their water heaters.

70.     Had it done so, this loss would have been prevented.

71.     Instead, according to Defendant, it changed the design of certain water heaters to remove the defects without recalling the defective models and without warning the consumer of the defects in the already sold machines.

72.     Defendant is strictly liable for the damages sustained because of its failure to warn/instruct regarding the Water Heater and Sensor's defective and unreasonably dangerous condition, both pre- and post-sale, in one more of the following ways:

> (a)     Failing to warn purchasers and users that Defendant's water heaters can catastrophically fail;
>
> (b)     Failing to warn purchasers and users that exposure to potable drinking water could corrode, crack or fracture the water heater's temperature sensor;
>
> (c)     Failing to warn purchasers and users that the water heaters with TOD sensors needed to be replaced with non-defective sensors, as was done by Seisco/A.O. Smith post-loss;
>
> (d)     Failing to post-sale warn purchasers and users that defendant's water heaters and sensors were defective and presented a serious risk of failure; and

(e)    Failing to warn purchasers and users of its water heaters in other ways, under the circumstances.

73.    As a direct and proximate result of Defendant's aforesaid acts and/or omissions, for which Defendant is strictly liable, Plaintiffs suffered damages.

**WHEREFORE**, Plaintiffs hereby demand judgment in its favor and against Seisco International LLC, jointly and severally, in an amount in excess of $113,409.02, along with interests, attorneys' fees, costs and other such relief as this Court may deem just and appropriate.


## COUNT FIVE – NEGLIGENT FAILURE TO WARN/INSTRUCT OR INADEQUATE WARNING/INSTRUCTION
### *(against Seisco)*

74.    Plaintiffs incorporate the allegations contained in the preceding paragraphs as if fully set forth herein.

75.    Christian Home is a member of the class of persons that Defendant should reasonably have foreseen as being subject to the harms caused by the Water Heater and Sensor's defective condition.

76.    At the time Defendant sold the Water Heater, Defendant knew, or should have known, that the Water Heater and Sensor contained latent hazards and defects and that consumers would not comprehend the latent hazards and defects.

77.    Defendant knew, or should have known, that the Water Heater and Sensor, were susceptible to failure under expected installation and use conditions.

78.    Defendant failed to inform Christian Home as to the Water Heater's susceptibility to sudden catastrophic failure.

79.    Defendant had a duty to provide consumers and users of its water heaters, including Christian Home, with necessary and adequate warnings of risks and hazards associated

with the use of its water heaters, which were known to Defendant and unknown to or unappreciated by the purchasers and users.

80. Defendant breached this duty to Christian Home.

81. The failure of the Water Heater and Sensor were due to the lack of and inadequacy of warnings and instructions.

82. Had necessary and adequate warnings been supplied, the purchasers and users of the water heaters, including Christian Home, would have either not purchased or not used Defendant's water heaters or would have otherwise avoided harm to their property.

83. As a direct and proximate result of Defendant's negligent failure to supply necessary and adequate warnings and instructions, Christian Home suffered damage to their property.

**WHEREFORE,** Plaintiffs hereby demand judgment in its favor and against Seisco International LLC, jointly and severally, in an amount in excess of $113,409.02, along with interests, attorneys' fees, costs and other such relief as this Court may deem just and appropriate.

## COUNT SIX – STRICT PRODUCT LIABILITY
*(against A.O. Smith)*

84. Plaintiffs incorporate the foregoing paragraphs by reference as though fully set forth at length herein.

85. Defendant designed, manufactured, assembled, tested, marketed, inspected, distributed, supplied and/or sold the Water Heater and Sensor in an unreasonably dangerous and defective condition such that it was not reasonably fit, suitable or safe for its normal, ordinary, intended, expected or reasonably foreseeable use, including for use with potable drinking water.

86. At the time that the Water Heater and its Sensor were sold, they were in the same unreasonably dangerous and defective condition as when they left Defendant's custody and/or control.

87. At all times relevant hereto, the Water Heater and its Sensor were used in the manner that was ordinary, normal, intended, expected and reasonably foreseeable by Defendant.

88.     The defective condition of the Water Heater and its Sensor were the direct and proximate cause of the water loss and resulting property damage, for which the Defendant, acting by and through their employees, agents, contractors, subcontractors, servants, representatives, and/or other designees, each of whom was working within the course and scope of their employment and/or authority, for which the Defendant is strictly liable by reason of, *inter alia*:

    (a)    Designing, manufacturing and/or selling the Water Heater in a condition in which the Sensor would corrode, fracture and fail during ordinary use of the water heater;

    (b)    Designing, manufacturing and/or selling the Water Heater in a way that put excessive stresses on the Sensor during the manufacturing and assembly process thereby causing it to fracture/corrode during ordinary use of the water heater; and

    (c)    Designing, manufacturing and/or selling the Water Heater with brass temperature sensors comprising of 36% zinc;

    (d)    Failing to design, manufacture and/or sell the Sensor in a condition that would not result in dezincification and stress corrosion cracking;

    (e)    Failing to design, manufacture and/or sell the Water Heater in a manner that would not result in the water loss; and

    (f)    Failing to sell the Water Heater and Sensor with alternative designs that would have prevented the harm.

89.     For the above-referenced reasons, the Defendant is strictly liable for the damages caused by the Water Heater.

90.     The unreasonably dangerous and defective condition of the Water Heater was a direct and proximate cause of the damage Plaintiffs suffered.

**WHEREFORE,** Plaintiffs hereby demand judgment in their favor and against A.O. Smith Corporation, jointly and severally, in an amount in excess of $113,409.02, along with interests, attorneys' fees, costs and other such relief as this Court may deem just and appropriate.

## COUNT SEVEN – NEGLIGENCE
*(against A.O. Smith)*

91.     Plaintiffs incorporate the foregoing paragraphs by reference as though fully set forth at length herein.

92.     Defendant owed a duty to Plaintiffs to properly design, manufacture, distribute and/or sell the Water Heater and Sensor in a condition that was safe for its ordinary, normal, intended, expected and reasonably foreseeable use, including safe to human health.

93.     Defendant, acting by and through its agents, servants, employees, sub-contractors, representatives and/or other designees, all acting within the course, scope and authority of their employment, breached its duty in one or more of the following ways, *inter alia*:

    (a)     Designing, manufacturing, assembling, distributing, and/or selling the Water Heater and the Sensor with improper materials and materials composition;

    (b)     Designing, manufacturing, assembling, distributing and/or selling the Water Heater and the Sensor in a condition that Defendant knew, or reasonably should have known, was unreasonably dangerous and defective;

    (c)     Designing, manufacturing, assembling, distributing and/or selling the Water Heater and Sensor that subjected Plaintiffs to an unreasonable risk of harm;

    (d)     Failing to design, manufacture, assemble, test, inspect, market, distribute and/or sell the Water Heater and Sensor so that it was safe, suitable and fit for its ordinary, normal, intended, expected and foreseeable use;

    (e)     Failing to design, manufacture, assemble, test, inspect, market, distribute and/or sell the Water Heater and Sensor in conformity with prevailing industry specifications and standards;

    (f)     Failing to adequately and properly test and inspect the Water Heater and its component parts, so as to prevent consumers, including Plaintiffs, from being subjected to an unreasonable risk of harm;

    (g)     Failing to design, manufacture, assemble, test, inspect, market, distribute and/or sell the Water Heater and Sensor with the appropriate safety devices or design to prevent the risk of failure;

    (h)     Failing to discover the defects in the design and manufacture of the Water Heater;

(i)    Failing to discover the defects in the design and manufacture of the Sensor;

(j)    Failing to adequately and properly supervise, monitor, direct, advise and control the design and manufacture of the Water Heater and Sensor;

(k)    Failing to institute or provide adequate policies, procedures and/or controls so as to avoid designing, manufacturing, distributing and/or selling the Water Heater in a defective and unreasonably dangerous condition;

(l)    Failing to design, manufacture, assemble, test, inspect, market, distribute and/or sell the Water Heater and Sensor with the proper material composition so as to prevent failure;

(m)    Failing to provide adequate directions, instructions and/or warnings concerning the risk of failure; and

(n)    Otherwise failing to exercise due care under the circumstances.

94.    As a direct and proximate result of Defendant's negligent, reckless and/or careless acts and/or omissions, by and through its agents, servants, employees, sub-contractors, representatives and/or other designees, all acting within the course, scope and authority of their employment, Plaintiffs suffered property damages.

95.    The damages sustained by Plaintiffs are within the scope of Defendant's liability, and said damages arose from the same general type of conduct that Defendant should have taken reasonable steps to avoid.

**WHEREFORE,** Plaintiffs hereby demand judgment in its favor and against A.O. Smith Corporation, jointly and severally, in an amount in excess of $113,409.02, along with interests, attorneys' fees, costs and other such relief as this Court may deem just and appropriate.

## COUNT EIGHT – BREACH OF WARRANTY
*(against A.O. Smith)*

96.    Plaintiffs incorporate the foregoing paragraphs by reference as though fully set forth at length herein.

97.    Defendant expressly and/or impliedly warranted that the Water Heater was fit for use in the ordinary, normal, intended, expected and reasonably foreseeable manner.

98.     Defendant knew or should have known that consumers, including Christian Home, rely on Defendant's superior knowledge skill and expertise in the design, manufacture, assembly and distribution of water heaters, including the Water Heater.

99.     While the Water Heater was being used in its ordinary, normal, intended, expected and reasonably foreseeable manner, a substantial water loss occurred as a result of a design and/or manufacturing defect in the Water Heater.

100.    As a direct and proximate result of Defendant's breach of its express and/or implied warranties, Plaintiffs suffered substantial damage.

**WHEREFORE,** Plaintiffs hereby demand judgment in its favor and against A.O. Smith Corporation, jointly and severally, in an amount in excess of $113,409.02, along with interests, attorneys' fees, costs and other such relief as this Court may deem just and appropriate.

## COUNT NINE – STRICT LIABILITY: FAILURE TO WARN/INSTRUCT OR INADEQUATE WARNING/INSTRUCTION
*(against A.O. Smith)*

101.    Plaintiffs incorporate the allegations contained in the preceding paragraphs as if fully set forth at length herein.

102.    The Water Heater and Sensor that Defendant designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold, were unreasonably dangerous in their design and manufacture, and such defects existed at the time of marketing.

103.    Christian Home was a member of the class of persons that Defendant should reasonably have foreseen as being subject to the harms caused by the Water Heater and Sensor's defective condition.

104.    At the time Defendant sold the Water Heater and Sensor, Defendant knew, or should have known, that the Water Heater and Sensor contained a non-obvious and unreasonably dangerous condition, which a consumer, including Christian Home, would not comprehend without adequate warnings/instructions.

105.     Defendant knew, or should have known, that the Water Heater and Sensor were highly susceptible to failure under expected installation and use conditions and that consumers, including Christian Home, would not inspect or replace the Water Heater without adequate warnings/instructions.

106.     Defendant failed to inform consumers, including Christian Home, as to the Water Heater's susceptibility to sudden catastrophic failure.

107.     The Water Heater and Sensor were defective and unreasonably dangerous due to the lack of warnings/instructions regarding the risk of failure and potential harm.

108.     Had Christian Home been adequately warned/instructed concerning the defects or the likelihood that the Water Heater would fail, they would have taken steps to avoid the harm by replacing the Water Heater or by not purchasing it.

109.     Furthermore, after learning of defects with the temperature controls and that its water heaters could suddenly fail, Defendant had a duty to warn consumers of the possibility that catastrophic failure and flooding could result from the failure of their water heaters.

110.     Had it done so, this loss would have been prevented.

111.     Instead, according to Defendant, it changed the design of certain water heaters to remove the defects without recalling the defective models and without warning the consumer of the defects in the already sold machines.

112.     Defendant is strictly liable for the damages sustained because of its failure to warn/instruct regarding the Water Heater and Sensor's defective and unreasonably dangerous condition, both pre- and post-sale, in one more of the following ways:

  (a)     Failing to warn purchasers and users that Defendant's water heaters can catastrophically fail;

  (b)     Failing to warn purchasers and users that exposure to potable drinking water could corrode, crack or fracture the water heater's temperature sensor;

  (c)     Failing to warn purchasers and users that the water heaters with TOD sensors needed to be replaced with non-defective sensors, as was done by Seisco/A.O. Smith post-loss;

      (d)     Failing to post-sale warn purchasers and users that defendant's water heaters and sensors were defective and presented a serious risk of failure; and

      (e)     Failing to warn purchasers and users of its water heaters in other ways, under the circumstances.

113.    As a direct and proximate result of Defendant's aforesaid acts and/or omissions, for which Defendant is strictly liable, Plaintiffs suffered damages.

**WHEREFORE**, Plaintiffs hereby demand judgment in its favor and against A.O. Smith Corporation, jointly and severally, in an amount in excess of $113,409.02, along with interests, attorneys' fees, costs and other such relief as this Court may deem just and appropriate.

## COUNT TEN – NEGLIGENT FAILURE TO WARN/INSTRUCT OR INADEQUATE WARNING/INSTRUCTION
*(against A.O. Smith)*

114.    Plaintiffs incorporate the allegations contained in the preceding paragraphs as if fully set forth herein.

115.    Christian Home is a member of the class of persons that Defendant should reasonably have foreseen as being subject to the harms caused by the Water Heater and Sensor's defective condition.

116.    At the time Defendant sold the Water Heater, Defendant knew, or should have known, that the Water Heater and Sensor contained latent hazards and defects and that consumers would not comprehend the latent hazards and defects.

117.    Defendant knew, or should have known, that the Water Heater and Sensor, were susceptible to failure under expected installation and use conditions.

118.    Defendant failed to inform Christian Home as to the Water Heater's susceptibility to sudden catastrophic failure.

119. Defendant had a duty to provide consumers and users of its water heaters, including Christian Home, with necessary and adequate warnings of risks and hazards associated with the use of its water heaters, which were known to Defendant and unknown to or unappreciated by the purchasers and users.

120. Defendant breached this duty to Christian Home.

121. The failure of the Water Heater and Sensor were due to the lack of and inadequacy of warnings and instructions.

122. Had necessary and adequate warnings been supplied, the purchasers and users of the water heaters, including Christian Home, would have either not purchased or not used Defendant's water heaters or would have otherwise avoided harm to their property.

123. As a direct and proximate result of Defendant's negligent failure to supply necessary and adequate warnings and instructions, Christian Home suffered damage to their property.

**WHEREFORE**, Plaintiffs hereby demand judgment in its favor and against A.O. Smith Corporation, jointly and severally, in an amount in excess of $113,409.02, along with interests, attorneys' fees, costs and other such relief as this Court may deem just and appropriate.

## COUNT ELEVEN – STRICT PRODUCT LIABILITY
*(against Therm-O-Disc)*

124. Plaintiffs incorporate the foregoing paragraphs by reference as though fully set forth at length herein.

125. Defendant designed, manufactured, assembled, tested, marketed, inspected, distributed, supplied and/or sold the Water Heater and Sensor in an unreasonably dangerous and defective condition such that it was not reasonably fit, suitable or safe for its normal, ordinary, intended, expected or reasonably foreseeable use, including for use with potable drinking water.

126. At the time that the Water Heater and its Sensor were sold, they were in the same unreasonably dangerous and defective condition as when they left Defendant's custody and/or control.

127. At all times relevant hereto, the Water Heater and its Sensor were used in the manner that was ordinary, normal, intended, expected and reasonably foreseeable by Defendant.

128. The defective condition of the Water Heater and its Sensor were the direct and proximate cause of the water loss and resulting property damage, for which the Defendant, acting by and through their employees, agents, contractors, subcontractors, servants, representatives, and/or other designees, each of whom was working within the course and scope of their employment and/or authority, for which the Defendant is strictly liable by reason of, *inter alia*:

    (a) Designing, manufacturing and/or selling the Sensor in a condition in which the Sensor would corrode, fracture and fail during ordinary use of the water heater;

    (b) Designing, manufacturing and/or selling the Sensor in a way that put excessive stresses on the Sensor during the manufacturing and assembly process thereby causing it to fracture/corrode during ordinary use of the water heater; and

    (c) Designing, manufacturing and/or selling the Sensor comprising of 36% zinc;

    (d) Failing to design, manufacture and/or sell the Sensor in a condition that would not result in dezincification and stress corrosion cracking;

    (e) Failing to design, manufacture and/or sell the Sensor in a manner that would not result in the water loss; and

    (f) Failing to sell the Water Heater and Sensor with alternative designs that would have prevented the harm.

129. For the above-referenced reasons, the Defendant is strictly liable for the damages caused by the Sensor and the Water Heater in which the Sensor was a component part.

130. The unreasonably dangerous and defective condition of the Sensor and the Water Heater in which the Sensor was incorporated in was a direct and proximate cause of the damage Plaintiffs suffered.

**WHEREFORE**, Plaintiffs hereby demand judgment in their favor and against Therm-O-Disc, Incorporated, jointly and severally, in an amount in excess of $113,409.02, along with interests, attorneys' fees, costs and other such relief as this Court may deem just and appropriate.

## COUNT TWELVE – NEGLIGENCE
*(against Therm-O-Disc)*

131. Plaintiffs incorporate the foregoing paragraphs by reference as though fully set forth at length herein.

132. Defendant owed a duty to Plaintiffs to properly design, manufacture, distribute and/or sell the Water Heater and Sensor in a condition that was safe for its ordinary, normal, intended, expected and reasonably foreseeable use, including safe to human health.

133. Defendant, acting by and through its agents, servants, employees, sub-contractors, representatives and/or other designees, all acting within the course, scope and authority of their employment, breached its duty in one or more of the following ways, *inter alia*:

(a) Designing, manufacturing, assembling, distributing, and/or selling the Water Heater and the Sensor with improper materials and materials composition;

(b) Designing, manufacturing, assembling, distributing and/or selling the Sensor in a condition that Defendant knew, or reasonably should have known, was unreasonably dangerous and defective;

(c) Designing, manufacturing, assembling, distributing and/or selling the Sensor that subjected Plaintiffs to an unreasonable risk of harm;

(d) Failing to design, manufacture, assemble, test, inspect, market, distribute and/or sell the Sensor so that it was safe, suitable and fit for its ordinary, normal, intended, expected and foreseeable use;

(e) Failing to design, manufacture, assemble, test, inspect, market, distribute and/or sell the Sensor in conformity with prevailing industry specifications and standards;

(f) Failing to adequately and properly test and inspect the Water Heater and its component parts, so as to prevent consumers, including Plaintiffs, from being subjected to an unreasonable risk of harm;

(g) Failing to design, manufacture, assemble, test, inspect, market, distribute and/or sell the Water Heater and Sensor with the appropriate safety devices or design to prevent the risk of failure;

(h) Failing to discover the defects in the design and manufacture of the Sensor;

(i)     Failing to adequately and properly supervise, monitor, direct, advise and control the design and manufacture of the Water Heater and Sensor;

(j)     Failing to institute or provide adequate policies, procedures and/or controls so as to avoid designing, manufacturing, distributing and/or selling the Sensor in a defective and unreasonably dangerous condition;

(k)    Failing to design, manufacture, assemble, test, inspect, market, distribute and/or sell the Sensor with the proper material composition so as to prevent failure;

(l)     Failing to provide adequate directions, instructions and/or warnings concerning the risk of failure; and

(m)    Otherwise failing to exercise due care under the circumstances.

134. As a direct and proximate result of Defendant's negligent, reckless and/or careless acts and/or omissions, by and through its agents, servants, employees, sub-contractors, representatives and/or other designees, all acting within the course, scope and authority of their employment, Plaintiffs suffered property damages.

135. The damages sustained by Plaintiffs are within the scope of Defendant's liability, and said damages arose from the same general type of conduct that Defendant should have taken reasonable steps to avoid.

**WHEREFORE,** Plaintiffs hereby demand judgment in its favor and against Therm-O-Disc, Incorporated, jointly and severally, in an amount in excess of $113,409.02, along with interests, attorneys' fees, costs and other such relief as this Court may deem just and appropriate.

## COUNT THIRTEEN – BREACH OF WARRANTY
*(against Therm-O-Disc)*

136. Plaintiffs incorporate the foregoing paragraphs by reference as though fully set forth at length herein.

137. Defendant expressly and/or impliedly warranted that the Sensor was fit for use in the ordinary, normal, intended, expected and reasonably foreseeable manner.

138. Defendant knew or should have known that consumers, including Christian Home, rely on Defendant's superior knowledge skill and expertise in the design, manufacture, assembly and distribution of temperature sensors for water heaters, including the Sensors.

139. While the Water Heater was being used in its ordinary, normal, intended, expected and reasonably foreseeable manner, a substantial water loss occurred as a result of a design and/or manufacturing defect in the Water Heater and its Sensor.

140. As a direct and proximate result of Defendant's breach of its express and/or implied warranties, Plaintiffs suffered substantial damage.

**WHEREFORE**, Plaintiffs hereby demand judgment in its favor and against Therm-O-Disc, Incorporated, jointly and severally, in an amount in excess of $113,409.02, along with interests, attorneys' fees, costs and other such relief as this Court may deem just and appropriate.

## COUNT FOURTEEN – STRICT LIABILITY: FAILURE TO WARN/INSTRUCT OR INADEQUATE WARNING/INSTRUCTION
### *(against Therm-O-Disc)*

141. Plaintiffs incorporate the allegations contained in the preceding paragraphs as if fully set forth at length herein.

142. The Sensor that Defendant designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold, were unreasonably dangerous in their design and manufacture, and such defects existed at the time of marketing.

143. Christian Home was a member of the class of persons that Defendant should reasonably have foreseen as being subject to the harms caused by the Sensor's defective condition.

144. At the time Defendant sold the Sensor, Defendant knew, or should have known, that the Sensor contained a non-obvious and unreasonably dangerous condition, which a consumer, including Christian Home, would not comprehend without adequate warnings/instructions.

145.    Defendant knew, or should have known, that the Sensor was highly susceptible to failure under expected installation and use conditions and that consumers, including Christian Home, would not inspect or replace the Sensor without adequate warnings/instructions.

146.    Defendant failed to inform consumers, including Christian Home, as to the Sensor's susceptibility to sudden catastrophic failure.

147.    The Water Heater and Sensor were defective and unreasonably dangerous due to the lack of warnings/instructions regarding the risk of failure and potential harm.

148.    Had Christian Home been adequately warned/instructed concerning the defects or the likelihood that the Sensor and Water Heater would fail, they would have taken steps to avoid the harm by replacing the Sensor or by not purchasing the Water Heater.

149.    Furthermore, after learning of defects with the temperature controls, Defendant had a duty to warn consumers of the possibility that catastrophic failure and flooding could result from the failure of their sensors.

150.    Had it done so, this loss would have been prevented.

151.    Defendant is strictly liable for the damages sustained because of its failure to warn/instruct regarding the Sensor's defective and unreasonably dangerous condition, both pre- and post-sale, in one more of the following ways:

(a)    Failing to warn purchasers and users that Defendant's temperature sensors can catastrophically fail;

(b)    Failing to warn purchasers and users that exposure to potable drinking water could corrode, crack or fracture the water heater's temperature sensor;

(c)    Failing to warn purchasers and users that the water heaters with TOD sensors needed to be replaced with non-defective sensors, as was done by Seisco/A.O. Smith post-loss;

(d)    Failing to post-sale warn purchasers and users that defendant's sensors were defective and presented a serious risk of failure; and

(e)    Failing to warn purchasers and users of its sensors in other ways, under the circumstances.

152.    As a direct and proximate result of Defendant's aforesaid acts and/or omissions, for which Defendant is strictly liable, Plaintiffs suffered damages.

**WHEREFORE**, Plaintiffs hereby demand judgment in its favor and against Therm-O-Disc, Incorporated, jointly and severally, in an amount in excess of $113,409.02, along with interests, attorneys' fees, costs and other such relief as this Court may deem just and appropriate.

### COUNT FIFTEEN – NEGLIGENT FAILURE TO WARN/INSTRUCT OR INADEQUATE WARNING/INSTRUCTION
*(against Therm-O-Disc)*

153.    Plaintiffs incorporate the allegations contained in the preceding paragraphs as if fully set forth herein.

154.    Christian Home is a member of the class of persons that Defendant should reasonably have foreseen as being subject to the harms caused by the Sensor's defective condition.

155.    At the time Defendant sold the Water Heater, Defendant knew, or should have known, that the Sensor contained latent hazards and defects and that users and consumers would not comprehend the latent hazards and defects.

156.    Defendant knew, or should have known, that the Sensor was susceptible to failure under expected installation and use conditions.

157.    Defendant failed to inform Christian Home as to the Sensor's susceptibility to sudden catastrophic failure.

158.    Defendant had a duty to provide consumers and users of its sensors, including Christian Home, with necessary and adequate warnings of risks and hazards associated with the use of its water heaters, which were known to Defendant and unknown to or unappreciated by the purchasers and users.

159.    Defendant breached this duty to Christian Home.

160.    The Sensor, and the Water Heater in which the Sensor was incorporated, was defective due to the lack of and inadequacy of warnings and instructions.

161.    Had necessary and adequate warnings been supplied, the purchasers and users of the sensors and water heaters, including Christian Home, would have either not purchased or used the sensors or water heaters or would have otherwise avoided harm to their property.

162.    As a direct and proximate result of Defendant's negligent failure to supply necessary and adequate warnings and instructions, Christian Home suffered damage to their property.

**WHEREFORE**, Plaintiffs hereby demand judgment in its favor and against Therm-O-Disc, Incorporated, jointly and severally, in an amount in excess of $113,409.02, along with interests, attorneys' fees, costs and other such relief as this Court may deem just and appropriate.

<u>**COUNT SIXTEEN – STRICT PRODUCT LIABILITY**</u>
*(against Emerson Electric)*

163.    Plaintiffs incorporate the foregoing paragraphs by reference as though fully set forth at length herein.

164.    Defendant designed, manufactured, assembled, tested, marketed, inspected, distributed, supplied and/or sold the Water Heater and Sensor in an unreasonably dangerous and defective condition such that it was not reasonably fit, suitable or safe for its normal, ordinary, intended, expected or reasonably foreseeable use, including for use with potable drinking water.

165.    At the time that the Water Heater and its Sensor were sold, they were in the same unreasonably dangerous and defective condition as when they left Defendant's custody and/or control.

166.    At all times relevant hereto, the Water Heater and its Sensor were used in the manner that was ordinary, normal, intended, expected and reasonably foreseeable by Defendant.

167.    The defective condition of the Water Heater and its Sensor were the direct and proximate cause of the water loss and resulting property damage, for which the Defendant, acting by and through their employees, agents, contractors, subcontractors, servants, representatives, and/or other designees, each of whom was working within the course and scope of their employment and/or authority, for which the Defendant is strictly liable by reason of, *inter alia*:

    (a)    Designing, manufacturing and/or selling the Sensor in a condition in which the Sensor would corrode, fracture and fail during ordinary use of the water heater;

    (b)    Designing, manufacturing and/or selling the Sensor in a way that put excessive stresses on the Sensor during the manufacturing and assembly process thereby causing it to fracture/corrode during ordinary use of the water heater; and

    (c)    Designing, manufacturing and/or selling the Sensor comprising of 36% zinc;

    (d)    Failing to design, manufacture and/or sell the Sensor in a condition that would not result in dezincification and stress corrosion cracking;

    (e)    Failing to design, manufacture and/or sell the Sensor in a manner that would not result in the water loss; and

    (f)    Failing to sell the Water Heater and Sensor with alternative designs that would have prevented the harm.

168.    For the above-referenced reasons, the Defendant is strictly liable for the damages caused by the Sensor and the Water Heater in which the Sensor was a component part.

169.    The unreasonably dangerous and defective condition of the Sensor and the Water Heater in which the Sensor was incorporated in was a direct and proximate cause of the damage Plaintiffs suffered.

**WHEREFORE**, Plaintiffs hereby demand judgment in their favor and against Emerson Electric Co., jointly and severally, in an amount in excess of $113,409.02, along with interests, attorneys' fees, costs and other such relief as this Court may deem just and appropriate.

## COUNT SEVENTEEN – NEGLIGENCE
*(against Emerson Electric)*

170.    Plaintiffs incorporate the foregoing paragraphs by reference as though fully set forth at length herein.

171.    Defendant owed a duty to Plaintiffs to properly design, manufacture, distribute and/or sell the Water Heater and Sensor in a condition that was safe for its ordinary, normal, intended, expected and reasonably foreseeable use, including safe to human health.

172. Defendant, acting by and through its agents, servants, employees, sub-contractors, representatives and/or other designees, all acting within the course, scope and authority of their employment, breached its duty in one or more of the following ways, *inter alia*:

(a) Designing, manufacturing, assembling, distributing, and/or selling the Water Heater and the Sensor with improper materials and materials composition;

(b) Designing, manufacturing, assembling, distributing and/or selling the Sensor in a condition that Defendant knew, or reasonably should have known, was unreasonably dangerous and defective;

(c) Designing, manufacturing, assembling, distributing and/or selling the Sensor that subjected Plaintiffs to an unreasonable risk of harm;

(d) Failing to design, manufacture, assemble, test, inspect, market, distribute and/or sell the Sensor so that it was safe, suitable and fit for its ordinary, normal, intended, expected and foreseeable use;

(e) Failing to design, manufacture, assemble, test, inspect, market, distribute and/or sell the Sensor in conformity with prevailing industry specifications and standards;

(f) Failing to adequately and properly test and inspect the Water Heater and its component parts, so as to prevent consumers, including Plaintiffs, from being subjected to an unreasonable risk of harm;

(g) Failing to design, manufacture, assemble, test, inspect, market, distribute and/or sell the Water Heater and Sensor with the appropriate safety devices or design to prevent the risk of failure;

(h) Failing to discover the defects in the design and manufacture of the Sensor;

(i) Failing to adequately and properly supervise, monitor, direct, advise and control the design and manufacture of the Water Heater and Sensor;

(j) Failing to institute or provide adequate policies, procedures and/or controls so as to avoid designing, manufacturing, distributing and/or selling the Sensor in a defective and unreasonably dangerous condition;

(k) Failing to design, manufacture, assemble, test, inspect, market, distribute and/or sell the Sensor with the proper material composition so as to prevent failure;

(l) Failing to provide adequate directions, instructions and/or warnings concerning the risk of failure; and

(m)     Otherwise failing to exercise due care under the circumstances.

173.     As a direct and proximate result of Defendant's negligent, reckless and/or careless acts and/or omissions, by and through its agents, servants, employees, sub-contractors, representatives and/or other designees, all acting within the course, scope and authority of their employment, Plaintiffs suffered property damages.

174.     The damages sustained by Plaintiffs are within the scope of Defendant's liability, and said damages arose from the same general type of conduct that Defendant should have taken reasonable steps to avoid.

**WHEREFORE**, Plaintiffs hereby demand judgment in its favor and against Emerson Electric Co., jointly and severally, in an amount in excess of $113,409.02, along with interests, attorneys' fees, costs and other such relief as this Court may deem just and appropriate.

### COUNT EIGHTEEN – BREACH OF WARRANTY
*(against Emerson Electric)*

175.     Plaintiffs incorporate the foregoing paragraphs by reference as though fully set forth at length herein.

176.     Defendant expressly and/or impliedly warranted that the Sensor was fit for use in the ordinary, normal, intended, expected and reasonably foreseeable manner.

177.     Defendant knew or should have known that consumers, including Christian Home, rely on Defendant's superior knowledge skill and expertise in the design, manufacture, assembly and distribution of temperature sensors for water heaters, including the Sensors.

178.     While the Water Heater was being used in its ordinary, normal, intended, expected and reasonably foreseeable manner, a substantial water loss occurred as a result of a design and/or manufacturing defect in the Water Heater and its Sensor.

179.     As a direct and proximate result of Defendant's breach of its express and/or implied warranties, Plaintiffs suffered substantial damage.

**WHEREFORE,** Plaintiffs hereby demand judgment in its favor and against Emerson Electric Co., jointly and severally, in an amount in excess of $113,409.02, along with interests, attorneys' fees, costs and other such relief as this Court may deem just and appropriate.

## COUNT NINETEEN – STRICT LIABILITY: FAILURE TO WARN/INSTRUCT OR INADEQUATE WARNING/INSTRUCTION
*(against Emerson Electric)*

180. Plaintiffs incorporate the allegations contained in the preceding paragraphs as if fully set forth at length herein.

181. The Sensor that Defendant designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold, were unreasonably dangerous in their design and manufacture, and such defects existed at the time of marketing.

182. Christian Home was a member of the class of persons that Defendant should reasonably have foreseen as being subject to the harms caused by the Sensor's defective condition.

183. At the time Defendant sold the Sensor, Defendant knew, or should have known, that the Sensor contained a non-obvious and unreasonably dangerous condition, which a consumer, including Christian Home, would not comprehend without adequate warnings/instructions.

184. Defendant knew, or should have known, that the Sensor was highly susceptible to failure under expected installation and use conditions and that consumers, including Christian Home, would not inspect or replace the Sensor without adequate warnings/instructions.

185. Defendant failed to inform consumers, including Christian Home, as to the Sensor's susceptibility to sudden catastrophic failure.

186. The Water Heater and Sensor were defective and unreasonably dangerous due to the lack of warnings/instructions regarding the risk of failure and potential harm.

187.    Had Christian Home been adequately warned/instructed concerning the defects or the likelihood that the Sensor and Water Heater would fail, they would have taken steps to avoid the harm by replacing the Sensor or by not purchasing the Water Heater.

188.    Furthermore, after learning of defects with the temperature controls, Defendant had a duty to warn consumers of the possibility that catastrophic failure and flooding could result from the failure of their sensors.

189.    Had it done so, this loss would have been prevented.

190.    Defendant is strictly liable for the damages sustained because of its failure to warn/instruct regarding the Sensor's defective and unreasonably dangerous condition, both pre- and post-sale, in one more of the following ways:

> (a)    Failing to warn purchasers and users that Defendant's temperature sensors can catastrophically fail;
>
> (b)    Failing to warn purchasers and users that exposure to potable drinking water could corrode, crack or fracture the water heater's temperature sensor;
>
> (c)    Failing to warn purchasers and users that the water heaters with TOD sensors needed to be replaced with non-defective sensors, as was done by Seisco/A.O. Smith post-loss;
>
> (d)    Failing to post-sale warn purchasers and users that defendant's sensors were defective and presented a serious risk of failure; and
>
> (e)    Failing to warn purchasers and users of its sensors in other ways, under the circumstances.

191.    As a direct and proximate result of Defendant's aforesaid acts and/or omissions, for which Defendant is strictly liable, Plaintiffs suffered damages.

**WHEREFORE**, Plaintiffs hereby demand judgment in its favor and against Emerson Electric Co., jointly and severally, in an amount in excess of $113,409.02, along with interests, attorneys' fees, costs and other such relief as this Court may deem just and appropriate.

## COUNT TWENTY – NEGLIGENT FAILURE TO WARN/INSTRUCT OR INADEQUATE WARNING/INSTRUCTION
### *(against Emerson Electric)*

192. Plaintiffs incorporate the allegations contained in the preceding paragraphs as if fully set forth herein.

193. Christian Home is a member of the class of persons that Defendant should reasonably have foreseen as being subject to the harms caused by the Sensor's defective condition.

194. At the time Defendant sold the Water Heater, Defendant knew, or should have known, that the Sensor contained latent hazards and defects and that users and consumers would not comprehend the latent hazards and defects.

195. Defendant knew, or should have known, that the Sensor was susceptible to failure under expected installation and use conditions.

196. Defendant failed to inform Christian Home as to the Sensor's susceptibility to sudden catastrophic failure.

197. Defendant had a duty to provide consumers and users of its sensors, including Christian Home, with necessary and adequate warnings of risks and hazards associated with the use of its water heaters, which were known to Defendant and unknown to or unappreciated by the purchasers and users.

198. Defendant breached this duty to Christian Home.

199. The Sensor, and the Water Heater in which the Sensor was incorporated, was defective due to the lack of and inadequacy of warnings and instructions.

200. Had necessary and adequate warnings been supplied, the purchasers and users of the sensors and water heaters, including Christian Home, would have either not purchased or used the sensors or water heaters or would have otherwise avoided harm to their property.

201. As a direct and proximate result of Defendant's negligent failure to supply necessary and adequate warnings and instructions, Christian Home suffered damage to their property.

**WHEREFORE,** Plaintiffs hereby demand judgment in its favor and against Emerson Electric Co., jointly and severally, in an amount in excess of $113,409.02, along with interests, attorneys' fees, costs and other such relief as this Court may deem just and appropriate.

## COUNT TWENTY-ONE – STRICT PRODUCT LIABILITY
*(against Emerson Manufacturing)*

202.    Plaintiffs incorporate the foregoing paragraphs by reference as though fully set forth at length herein.

203.    Defendant designed, manufactured, assembled, tested, marketed, inspected, distributed, supplied and/or sold the Water Heater and Sensor in an unreasonably dangerous and defective condition such that it was not reasonably fit, suitable or safe for its normal, ordinary, intended, expected or reasonably foreseeable use, including for use with potable drinking water.

204.    At the time that the Water Heater and its Sensor were sold, they were in the same unreasonably dangerous and defective condition as when they left Defendant's custody and/or control.

205.    At all times relevant hereto, the Water Heater and its Sensor were used in the manner that was ordinary, normal, intended, expected and reasonably foreseeable by Defendant.

206.    The defective condition of the Water Heater and its Sensor were the direct and proximate cause of the water loss and resulting property damage, for which the Defendant, acting by and through their employees, agents, contractors, subcontractors, servants, representatives, and/or other designees, each of whom was working within the course and scope of their employment and/or authority, for which the Defendant is strictly liable by reason of, *inter alia*:

> (a)    Designing, manufacturing and/or selling the Sensor in a condition in which the Sensor would corrode, fracture and fail during ordinary use of the water heater;
>
> (b)    Designing, manufacturing and/or selling the Sensor in a way that put excessive stresses on the Sensor during the manufacturing and assembly process thereby causing it to fracture/corrode during ordinary use of the water heater; and
>
> (c)    Designing, manufacturing and/or selling the Sensor with 36% zinc;

(d)     Failing to design, manufacture and/or sell the Sensor in a condition that would not result in dezincification and stress corrosion cracking;

(e)     Failing to design, manufacture and/or sell the Sensor in a manner that would not result in the water loss; and

(f)     Failing to sell the Water Heater and Sensor with alternative designs that would have prevented the harm.

207.    For the above-referenced reasons, the Defendant is strictly liable for the damages caused by the Sensor and the Water Heater in which the Sensor was a component part.

208.    The unreasonably dangerous and defective condition of the Sensor and the Water Heater in which the Sensor was incorporated in was a direct and proximate cause of the damage Plaintiffs suffered.

**WHEREFORE**, Plaintiffs hereby demand judgment in their favor and against The Emerson Electric Manufacturing Company, jointly and severally, in an amount in excess of $113,409.02, along with interests, attorneys' fees, costs and other such relief as this Court may deem just and appropriate.

**COUNT TWENTY-TWO – NEGLIGENCE**
*(against Emerson Manufacturing)*

209.    Plaintiffs incorporate the foregoing paragraphs by reference as though fully set forth at length herein.

210.    Defendant owed a duty to Plaintiffs to properly design, manufacture, distribute and/or sell the Water Heater and Sensor in a condition that was safe for its ordinary, normal, intended, expected and reasonably foreseeable use, including safe to human health.

211.    Defendant, acting by and through its agents, servants, employees, sub-contractors, representatives and/or other designees, all acting within the course, scope and authority of their employment, breached its duty in one or more of the following ways, *inter alia*:

(a)     Designing, manufacturing, assembling, distributing, and/or selling the Water Heater and the Sensor with improper materials and materials composition;

(b) Designing, manufacturing, assembling, distributing and/or selling the Sensor in a condition that Defendant knew, or reasonably should have known, was unreasonably dangerous and defective;

(c) Designing, manufacturing, assembling, distributing and/or selling the Sensor that subjected Plaintiffs to an unreasonable risk of harm;

(d) Failing to design, manufacture, assemble, test, inspect, market, distribute and/or sell the Sensor so that it was safe, suitable and fit for its ordinary, normal, intended, expected and foreseeable use;

(e) Failing to design, manufacture, assemble, test, inspect, market, distribute and/or sell the Sensor in conformity with prevailing industry specifications and standards;

(f) Failing to adequately and properly test and inspect the Water Heater and its component parts, so as to prevent consumers, including Plaintiffs, from being subjected to an unreasonable risk of harm;

(g) Failing to design, manufacture, assemble, test, inspect, market, distribute and/or sell the Water Heater and Sensor with the appropriate safety devices or design to prevent the risk of failure;

(h) Failing to discover the defects in the design and manufacture of the Sensor;

(i) Failing to adequately and properly supervise, monitor, direct, advise and control the design and manufacture of the Water Heater and Sensor;

(j) Failing to institute or provide adequate policies, procedures and/or controls so as to avoid designing, manufacturing, distributing and/or selling the Sensor in a defective and unreasonably dangerous condition;

(k) Failing to design, manufacture, assemble, test, inspect, market, distribute and/or sell the Sensor with the proper material composition so as to prevent failure;

(l) Failing to provide adequate directions, instructions and/or warnings concerning the risk of failure; and

(m) Otherwise failing to exercise due care under the circumstances.

212. As a direct and proximate result of Defendant's negligent, reckless and/or careless acts and/or omissions, by and through its agents, servants, employees, sub-contractors, representatives and/or other designees, all acting within the course, scope and authority of their employment, Plaintiffs suffered property damages.

213. The damages sustained by Plaintiffs are within the scope of Defendant's liability, and said damages arose from the same general type of conduct that Defendant should have taken reasonable steps to avoid.

**WHEREFORE**, Plaintiffs hereby demand judgment in its favor and against The Emerson Electric Manufacturing Company, jointly and severally, in an amount in excess of $113,409.02, along with interests, attorneys' fees, costs and other such relief as this Court may deem just and appropriate.

## COUNT TWENTY-THREE – BREACH OF WARRANTY
*(against Emerson Manufacturing)*

214. Plaintiffs incorporate the foregoing paragraphs by reference as though fully set forth at length herein.

215. Defendant expressly and/or impliedly warranted that the Sensor was fit for use in the ordinary, normal, intended, expected and reasonably foreseeable manner.

216. Defendant knew or should have known that consumers, including Christian Home, rely on Defendant's superior knowledge skill and expertise in the design, manufacture, assembly and distribution of temperature sensors for water heaters, including the Sensors.

217. While the Water Heater was being used in its ordinary, normal, intended, expected and reasonably foreseeable manner, a substantial water loss occurred as a result of a design and/or manufacturing defect in the Water Heater and its Sensor.

218. As a direct and proximate result of Defendant's breach of its express and/or implied warranties, Plaintiffs suffered substantial damage.

**WHEREFORE**, Plaintiffs hereby demand judgment in its favor and against The Emerson Electric Manufacturing Company, jointly and severally, in an amount in excess of $113,409.02, along with interests, attorneys' fees, costs and other such relief as this Court may deem just and appropriate.

## COUNT TWENTY-FOUR – STRICT LIABILITY: FAILURE TO WARN/INSTRUCT OR INADEQUATE WARNING/INSTRUCTION
*(against Emerson Manufacturing)*

219.    Plaintiffs incorporate the allegations contained in the preceding paragraphs as if fully set forth at length herein.

220.    The Sensor that Defendant designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold, were unreasonably dangerous in their design and manufacture, and such defects existed at the time of marketing.

221.    Christian Home was a member of the class of persons that Defendant should reasonably have foreseen as being subject to the harms caused by the Sensor's defective condition.

222.    At the time Defendant sold the Sensor, Defendant knew, or should have known, that the Sensor contained a non-obvious and unreasonably dangerous condition, which a consumer, including Christian Home, would not comprehend without adequate warnings/instructions.

223.    Defendant knew, or should have known, that the Sensor was highly susceptible to failure under expected installation and use conditions and that consumers, including Christian Home, would not inspect or replace the Sensor without adequate warnings/instructions.

224.    Defendant failed to inform consumers, including Christian Home, as to the Sensor's susceptibility to sudden catastrophic failure.

225.    The Water Heater and Sensor were defective and unreasonably dangerous due to the lack of warnings/instructions regarding the risk of failure and potential harm.

226.    Had Christian Home been adequately warned/instructed concerning the defects or the likelihood that the Sensor and Water Heater would fail, they would have taken steps to avoid the harm by replacing the Sensor or by not purchasing the Water Heater.

227. Furthermore, after learning of defects with the temperature controls, Defendant had a duty to warn consumers of the possibility that catastrophic failure and flooding could result from the failure of their sensors.

228. Had it done so, this loss would have been prevented.

229. Defendant is strictly liable for the damages sustained because of its failure to warn/instruct regarding the Sensor's defective and unreasonably dangerous condition, both pre- and post-sale, in one more of the following ways:

(a) Failing to warn purchasers and users that Defendant's temperature sensors can catastrophically fail;

(b) Failing to warn purchasers and users that exposure to potable drinking water could corrode, crack or fracture the water heater's temperature sensor;

(c) Failing to warn purchasers and users that the water heaters with TOD sensors needed to be replaced with non-defective sensors, as was done by Seisco/A.O. Smith post-loss;

(d) Failing to post-sale warn purchasers and users that defendant's sensors were defective and presented a serious risk of failure; and

(e) Failing to warn purchasers and users of its sensors in other ways, under the circumstances.

230. As a direct and proximate result of Defendant's aforesaid acts and/or omissions, for which Defendant is strictly liable, Plaintiffs suffered damages.

**WHEREFORE**, Plaintiffs hereby demand judgment in its favor and against The Emerson Electric Manufacturing Company, jointly and severally, in an amount in excess of $113,409.02, along with interests, attorneys' fees, costs and other such relief as this Court may deem just and appropriate.

### COUNT TWENTY-FIVE – NEGLIGENT FAILURE TO WARN/INSTRUCT OR INADEQUATE WARNING/INSTRUCTION
*(against Emerson Manufacturing)*

231. Plaintiffs incorporate the allegations contained in the preceding paragraphs as if fully set forth herein.

232. Christian Home is a member of the class of persons that Defendant should reasonably have foreseen as being subject to the harms caused by the Sensor's defective condition.

233. At the time Defendant sold the Water Heater, Defendant knew, or should have known, that the Sensor contained latent hazards and defects and that users and consumers would not comprehend the latent hazards and defects.

234. Defendant knew, or should have known, that the Sensor was susceptible to failure under expected installation and use conditions.

235. Defendant failed to inform Christian Home as to the Sensor's susceptibility to sudden catastrophic failure.

236. Defendant had a duty to provide consumers and users of its sensors, including Christian Home, with necessary and adequate warnings of risks and hazards associated with the use of its water heaters, which were known to Defendant and unknown to or unappreciated by the purchasers and users.

237. Defendant breached this duty to Christian Home.

238. The Sensor, and the Water Heater in which the Sensor was incorporated, was defective due to the lack of and inadequacy of warnings and instructions.

239. Had necessary and adequate warnings been supplied, the purchasers and users of the sensors and water heaters, including Christian Home, would have either not purchased or used the sensors or water heaters or would have otherwise avoided harm to their property.

240. As a direct and proximate result of Defendant's negligent failure to supply necessary and adequate warnings and instructions, Christian Home suffered damage to their property.

**WHEREFORE,** Plaintiffs hereby demand judgment in its favor and against The Emerson Electric Manufacturing Company, jointly and severally, in an amount in excess of $113,409.02, along with interests, attorneys' fees, costs and other such relief as this Court may deem just and appropriate.

## COUNT TWENTY-SIX – STRICT PRODUCT LIABILITY
*(against ABC Corporations 1-10)*

241. Plaintiffs incorporate the foregoing paragraphs by reference as though fully set forth at length herein.

242. Defendant designed, manufactured and/or sold the Water Heater and/or its defective component parts in an unreasonably dangerous and defective condition such that it was not reasonably fit, suitable or safe for its normal, ordinary, intended, expected or reasonably foreseeable use, including for use with potable drinking water.

243. At the time that the Water Heater and/or its defective component parts were sold, they were in the same unreasonably dangerous and defective condition as when they left Defendant's custody and/or control.

244. At all times relevant hereto, the Water Heater Water Heater and/or its defective component parts were used in the manner that was ordinary, normal, intended, expected and reasonably foreseeable by Defendant.

245. The defective condition of the Water Heater and/or its defective component parts were the direct and proximate cause of the water loss and resulting property damage, for which the Defendant, acting by and through their employees, agents, contractors, subcontractors, servants, representatives, and/or other designees, each of whom was working within the course and scope of their employment and/or authority, for which the Defendant is strictly liable by reason of, *inter alia*:

    (a)    Designing, manufacturing and/or selling the Water Heater and/or its defective component parts in a condition in which they would corrode, fracture and fail during ordinary use of the water heater;

    (b)    Designing, manufacturing and/or selling the Water Heater and/or its defective component parts in a way that put excessive stresses on the Sensor during the manufacturing and assembly process thereby causing it to fracture/corrode during ordinary use of the water heater; and

    (c)    Designing, manufacturing and/or selling the Water Heater with brass temperature sensors comprising of 36% zinc;

(d) Failing to design, manufacture and/or sell the Water Heater and/or its defective component parts in a condition that would not result in dezincification and stress corrosion cracking;

(e) Failing to design, manufacture and/or sell the Water Heater and/or its defective component parts in a manner that would not result in the water loss; and

(f) Failing to sell the Water Heater and/or its defective component parts with alternative designs that would have prevented the harm.

246. For the above-referenced reasons, the Defendant is strictly liable for the damages caused by the Water Heater.

247. The unreasonably dangerous and defective condition of the Water Heater and/or its defective component parts was a direct and proximate cause of the damage Plaintiffs suffered.

**WHEREFORE,** Plaintiffs hereby demand judgment in their favor and against ABC Corporations 1-10, jointly and severally, in an amount in excess of $113,409.02, along with interests, attorneys' fees, costs and other such relief as this Court may deem just and appropriate.

## COUNT TWENTY-SEVEN – NEGLIGENCE
*(against ABC Corporations 1-10)*

248. Plaintiffs incorporate the foregoing paragraphs by reference as though fully set forth at length herein.

249. Defendant owed a duty to Plaintiffs to properly design, manufacture, distribute and/or sell the Water Heater and/or its defective component parts in a condition that was safe for its ordinary, normal, intended, expected and reasonably foreseeable use, including safe to human health.

250. Defendant, acting by and through its agents, servants, employees, sub-contractors, representatives and/or other designees, all acting within the course, scope and authority of their employment, breached its duty in one or more of the following ways, *inter alia*:

(a) Designing, manufacturing, assembling, distributing, and/or selling the Water Heater and/or its defective component parts with improper materials and materials composition;

(b)     Designing, manufacturing, assembling, distributing and/or selling the Water Heater and/or its defective component parts in a condition that Defendant knew, or reasonably should have known, was unreasonably dangerous and defective;

(c)     Designing, manufacturing, assembling, distributing and/or selling the Water Heater and/or its defective component parts that subjected Plaintiffs to an unreasonable risk of harm;

(d)     Failing to design, manufacture, assemble, test, inspect, market, distribute and/or sell the Water Heater and/or its defective component parts so that it was safe, suitable and fit for its ordinary, normal, intended, expected and foreseeable use;

(e)     Failing to design, manufacture, assemble, test, inspect, market, distribute and/or sell the Water Heater and/or its defective component parts in conformity with prevailing industry specifications and standards;

(f)     Failing to adequately and properly test and inspect the Water Heater and its component parts, so as to prevent consumers, including Plaintiffs, from being subjected to an unreasonable risk of harm;

(g)     Failing to design, manufacture, assemble, test, inspect, market, distribute and/or sell the Water Heater and/or its defective component parts with the appropriate safety devices or design to prevent the risk of failure;

(h)     Failing to discover the defects in the design and manufacture of the Water Heater and/or its defective component parts;

(i)     Failing to adequately and properly supervise, monitor, direct, advise and control the design and manufacture of the Water Heater and/or its defective component parts;

(j)     Failing to institute or provide adequate policies, procedures and/or controls so as to avoid designing, manufacturing, distributing and/or selling the Water Heater and/or its defective component parts in a defective and unreasonably dangerous condition;

(k)     Failing to design, manufacture, assemble, test, inspect, market, distribute and/or sell the Water Heater and/or its defective component parts with the proper material composition so as to prevent failure;

(l)     Failing to provide adequate directions, instructions and/or warnings concerning the risk of failure; and

(m)     Otherwise failing to exercise due care under the circumstances.

251. As a direct and proximate result of Defendant's negligent, reckless and/or careless acts and/or omissions, by and through its agents, servants, employees, sub-contractors, representatives and/or other designees, all acting within the course, scope and authority of their employment, Plaintiffs suffered property damages.

252. The damages sustained by Plaintiffs are within the scope of Defendant's liability, and said damages arose from the same general type of conduct that Defendant should have taken reasonable steps to avoid.

**WHEREFORE,** Plaintiffs hereby demand judgment in its favor and against ABC Corporations 1-10, jointly and severally, in an amount in excess of $113,409.02, along with interests, attorneys' fees, costs and other such relief as this Court may deem just and appropriate.

## COUNT TWENTY-EIGHT– BREACH OF WARRANTY
*(against ABC Corporations 1-10)*

253. Plaintiffs incorporate the foregoing paragraphs by reference as though fully set forth at length herein.

254. Defendant expressly and/or impliedly warranted that the Water Heater and/or its defective component parts were fit for use in the ordinary, normal, intended, expected and reasonably foreseeable manner.

255. Defendant knew or should have known that consumers, including Christian Home, rely on Defendant's superior knowledge skill and expertise in the design, manufacture, assembly and distribution of water heaters, including the Water Heater and its defective component parts.

256. While the Water Heater was being used in its ordinary, normal, intended, expected and reasonably foreseeable manner, a substantial water loss occurred as a result of a design and/or manufacturing defect in the Water Heater.

257. As a direct and proximate result of Defendant's breach of its express and/or implied warranties, Plaintiffs suffered substantial damage.

**WHEREFORE,** Plaintiffs hereby demand judgment in its favor and against ABC Corporations 1-10, jointly and severally, in an amount in excess of $113,409.02, along with interests, attorneys' fees, costs and other such relief as this Court may deem just and appropriate.

## COUNT TWENTY-NINE – STRICT LIABILITY: FAILURE TO WARN/INSTRUCT OR INADEQUATE WARNING/INSTRUCTION
*(against ABC Corporations 1-10)*

258.    Plaintiffs incorporate the allegations contained in the preceding paragraphs as if fully set forth at length herein.

259.    The Water Heater and/or its defective component parts that Defendant designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold, were unreasonably dangerous in their design and manufacture, and such defects existed at the time of marketing.

260.    Christian Home was a member of the class of persons that Defendant should reasonably have foreseen as being subject to the harms caused by the Water Heater's defective condition.

261.    At the time Defendant sold the Water Heater and/or its defective component parts, Defendant knew, or should have known, that the Water Heater and/or its defective component parts contained a non-obvious and unreasonably dangerous condition, which a consumer, including Christian Home, would not comprehend without adequate warnings/instructions.

262.    Defendant knew, or should have known, that the Water Heater and/or its defective component parts were highly susceptible to failure under expected installation and use conditions and that consumers, including Christian Home, would not inspect or replace the Water Heater and/or its defective component parts without adequate warnings/instructions.

263.    Defendant failed to inform consumers, including Christian Home, as to the Water Heater's susceptibility to sudden catastrophic failure.

264.    The Water Heater and/or its defective component parts were defective and unreasonably dangerous due to the lack of warnings/instructions regarding the risk of failure and potential harm.

265.    Had Christian Home been adequately warned/instructed concerning the defects or the likelihood that the Water Heater would fail, they would have taken steps to avoid the harm by replacing the Water Heater or by not purchasing it.

266.    Furthermore, after learning of defects with the temperature controls and that its water heaters could suddenly fail, Defendant had a duty to warn consumers of the possibility that catastrophic failure and flooding could result from the failure of their water heaters.

267.    Had it done so, this loss would have been prevented.

268.    Instead, according to Defendant, it changed the design of certain water heaters to remove the defects without recalling the defective models and without warning the consumer of the defects in the already sold machines.

269.    Defendant is strictly liable for the damages sustained because of its failure to warn/instruct regarding the Water Heater's defective and unreasonably dangerous condition, both pre- and post-sale, in one more of the following ways:

    (a)    Failing to warn purchasers and users that Defendant's water heaters can catastrophically fail;

    (b)    Failing to warn purchasers and users that exposure to potable drinking water could corrode, crack or fracture the water heater's temperature sensor;

    (c)    Failing to warn purchasers and users that the water heaters with TOD sensors needed to be replaced with non-defective sensors, as was done by Seisco/A.O. Smith post-loss;

    (d)    Failing to post-sale warn purchasers and users that defendant's water heaters and sensors were defective and presented a serious risk of failure; and

    (e)    Failing to warn purchasers and users of its water heaters in other ways, under the circumstances.

270.    As a direct and proximate result of Defendant's aforesaid acts and/or omissions, for which Defendant is strictly liable, Plaintiffs suffered damages.

**WHEREFORE,** Plaintiffs hereby demand judgment in its favor and against ABC Corporations 1-10, jointly and severally, in an amount in excess of $113,409.02, along with interests, attorneys' fees, costs and other such relief as this Court may deem just and appropriate.

### COUNT THIRTY – NEGLIGENT FAILURE TO WARN/INSTRUCT OR INADEQUATE WARNING/INSTRUCTION
*(against ABC Corporations 1-10)*

271.    Plaintiffs incorporate the allegations contained in the preceding paragraphs as if fully set forth herein.

272.    Christian Home is a member of the class of persons that Defendant should reasonably have foreseen as being subject to the harms caused by the Water Heater's defective condition.

273.    At the time Defendant sold the Water Heater and/or its defective component parts, Defendant knew, or should have known, that the Water Heater and/or its defective component parts contained latent hazards and defects and that consumers would not comprehend the latent hazards and defects.

274.    Defendant knew, or should have known, that the Water Heater and/or its defective component parts, were susceptible to failure under expected installation and use conditions.

275.    Defendant failed to inform Christian Home as to the Water Heater's susceptibility to sudden catastrophic failure.

276.    Defendant had a duty to provide consumers and users of its water heaters, including Christian Home, with necessary and adequate warnings of risks and hazards associated with the use of its water heaters, which were known to Defendant and unknown to or unappreciated by the purchasers and users.

277.    Defendant breached this duty to Christian Home.

278. The failure of the Water Heater and/or its defective component parts were due to the lack of and inadequacy of warnings and instructions.

279. Had necessary and adequate warnings been supplied, the purchasers and users of the water heaters, including Christian Home, would have either not purchased or not used Defendant's water heaters or would have otherwise avoided harm to their property.

280. As a direct and proximate result of Defendant's negligent failure to supply necessary and adequate warnings and instructions, Christian Home suffered damage to their property.

**WHEREFORE,** Plaintiffs hereby demand judgment in its favor and against ABC Corporations 1-10, jointly and severally, in an amount in excess of $113,409.02, along with interests, attorneys' fees, costs and other such relief as this Court may deem just and appropriate.

### JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable as a matter of right.

TIMM W. REID AT0006547
REID LAW FIRM, P.L.L.C.
The Plaza - Suite 5
300 Walnut Street
Des Moines, Iowa, 50309-2239
Telephone: (515) 381-9842
Facsimile: (515) 219-8746
Email: timm@treidlawfirm.com

ATTORNEY FOR PLAINTIFFS